Our fifth case for this morning is Hernandez-Garcia v. Attorney General Barr, Ms. Saeed. Good morning, Your Honors. May it please the Court, Ms. Greenstein, on behalf of the petitioner. We are here today on a petition for review on the final order from the Board of Immigration of Appeals denying the petitioner's claim for asylum, withholding, and caps. The petitioner is a family of three members consisting of a mother and two children who entered the U.S. sometime in August of 2015 seeking asylum in the U.S. The petitioner was found credible in the immigration court, but the immigration court denied her relief based on the issue that she did not demonstrate a nexus between the fear that she's claiming and the particular social group that she fits in. However, we argue that she did clearly establish a nexus between the fear and the particular social group that she fits in. This court has recognized that females living alone without a head of household or male protection with a strong ties to resources in the United States is a protected social group. Let's stop there. I'm looking at the immigration judge's opinion. The immigration judge basically is willing to give you that. She says, while the articulated particular social group of single females without a head of household may be cognizable. Let's assume that's a group. She's not presented sufficient evidence that she was targeted because of her membership in that particular group. The fact is she lives for years in Guatemala after her husband has gone to the United States raising a family. I don't see any evidence in this record, at least, that she has any problem at all that bubbles up to the surface anyhow. We don't know anything about how much harassment people with perceived wealth or relative wealth have who have male heads of household. I can see that the immigration judge saw this as a failure of proof on nexus. I see your point, Your Honor. The issue is that the immigration judge only focused on the wealth aspect. I don't see that at all. She has a paragraph about wealth, but then she goes on in the next paragraph saying, not because they targeted her on account of a protected ground. It's hard for the immigration judge to write very much about the absence of evidence. Then in the next paragraph, she says there's no evidence that the risk faced by a respondent is distinct because of her opposition to the gangs or, pertinent here, her lack of a male head of household. I'm willing to be critical of immigration judges, but this immigration judge touches that base several times. Correct, Your Honor, but the focus was primarily on the wealth and the gangs targeting for wealth and the ties in the U.S. But that doesn't mean I should ignore the other things the judge says. Right, and I'm not saying that you should, but the fact is that she didn't touch on the fact that the petitioner was targeted sometime in 2013-2014 when her third eldest son left to the U.S. That's when she received the numerous threats, threatening her life and her children's lives. Well, there was only one, was it? Yes, there was only one, but then the other notes were also threatening severe consequences if she does not cooperate with their demands. Even if they did spell out that we're going to come to your house, grab your children, kidnap them, or kill you, doesn't mean that those are not threats also targeted towards safety for the petitioner and her children. Coincidence isn't causation. We know this as a general matter, and I don't dispute that because the immigration judge found this evidence credible, let's assume that these actions that she attributed to the gangs begin when the older son leaves. But why didn't they happen before? I mean, she'd been going to the city for ages to pick up money. She has what's perceived locally as a comfortable standard of living. The judge is looking for something to connect protected status to the negative actions, I'll just call it generally, because we also have an issue here. Even if all the rest of this happens, it wasn't enough to show either past persecution or reasonable likelihood of future. We think, Your Honor, that because the reason why she wasn't targeted before when she was collecting the money from the city was because she was a single woman, was because she still had her eldest son living with her at the time. So she wasn't a target or vulnerable to the Mara gang. So once that son left, that's when they saw her as a prime target, and she was vulnerable to their threats and their attacks. So that is our... What about, though, let's jump from nexus, which I do think is a big problem given the judge's findings, but let's move on. She also... The government has argued that the things that happened to her fall so far below what the board finds to be persecution. That's a pretty strong word. She's being harassed by the gang. We'll assume it's the gang, but not that much happens. Right, Your Honor, and I see your point with that aspect as well. This court has also, in Meta, determined that mere threats alone can be perceived as persecution. Only if they're really... I mean, we keep using these superlatives. Only if they're really serious threats. Right, and I agree with you. We don't see this here. And I agree with you, Judge, but I think it's unfair for us to require her to remain in Guatemala until the gangs actually execute their threats by either kidnapping, like I said, torture, or killing her to come into the U.S. and claim asylum. Well, but you need to tuck your theory into the cases that have been decided. So you have something like, I'm not sure how to pronounce this, but the Paz Macanthan case, where you've got somebody from Sri Lanka, and he's subjected to very serious threats, and yet we found no showing of past persecution. Maybe that was wrongly decided. I don't know, but that's certainly worse than what happened to her. It is, Your Honor, but like I said, I mean, it is one note. If you receive one note threatening your life and your children's life, you're not going to sit around and wait to see if they're actually going to execute that threat. What are you going to do? You're going to pick up everything and then try to avoid that threat by either relocating or going into another country and picking up that note. The kind of law that you're suggesting is the minute there's one death threat, you've established past persecution. I don't think there's a circuit in the country that holds that. It is enough to establish a well-founded fear of future persecution. So with asylum, you either establish a past persecution. More likely than not? What about relocation? The issue with that is the record is clear on that where the morrigan is controlling most of the country. So wherever she will go within the country, she'll face the same situation as she did in her hometown. So there's really no where for her to relocate in Guatemala. Okay. Counselor, could I ask you very briefly to address the Pereira issue? In the government's recent letter, our decision via Serrano and the second, sixth, and ninth circuit cases all rejecting this broad reading of Pereira. That was actually my second point. I understand that the precedent on Pereira is against me, but I would like to vocalize my opinion on the issue. It's just for the immigration court that lacks jurisdiction to correct the government's defective notice to appear filing is beyond my belief. I don't understand why the court is allowed to correct the defective filing when I personally, if I were to file a petition here, it will be rejected. I understand. In your view, is there anything that the United States could do to cure an original notice to appear that doesn't have a date and time and place for the hearing? If the government were to submit a notice to appear with a date and time by contacting the immigration court and figuring out the schedule that they have available to schedule a hearing on these removal proceedings, I think that's one way to go, or at least immigration court can have a system where it informs the government that the notice to appear is defective, and they must correct it before scheduling a hearing or issuing out any other court notices to the respondents. So you think it is a correctable problem? I do think it's a correctable problem. Thank you.  All right, thank you. Thank you. Mr. Pennington. Good morning. Greg Pennington on behalf of the Attorney General. The most straightforward path to a decision in this case would be the government's argument that Ms. Hernandez has waived any challenge to the nexus finding. This case is nearly indistinguishable from Lopez v. Sessions' 2017 case where the petitioner challenged whether a group was a particular social group and didn't challenge whether the motive of the gang members was the perceived wealth of the petitioners in that case. And the court held that it wasn't, in fact, holding on nexus, the agency holding on nexus, and found the argument waived. But waiver aside, the court's reviewing the agency's decision for substantial evidence. And as Chief Judge Woods already pointed out, the absence of evidence of how a female head of households are treated differently from people with a male figure, the opposite of the evidence shows that Ms. Hernandez testified that she received money from the United States for well over a decade. People in her village knew about this. She had a nicer home. Her children wore nicer clothes. She had nicer things in her home. These were the reasons she was targeted. That's the only reason the record reflects. There's no evidence that there was harassment or whatever it was, attention from the gangs, before the incidents that begin after the son leaves, his last son leaves. That's correct. That's more than a decade she lives there with maybe young male members of the household. Correct. So the husband left in 2001. There was nothing, so presumably the oldest child was still just a toddler at that age. And then the older son left to come to the United States in 2013. And even then, still another year passed before these notes started to come in. What is the government's position on death threats? Do you have to just sort of say, not today? Are you stark like? Or do you say a death threat is something you should just accept? Death threats are certainly troublesome, and the immigration judge recognized this. She found the threats bothersome. It's just that under the Dartha case law, threats alone, empty threats, are insufficient. Right. So what's an empty threat? So it's a little callous of the government to say that when the Mara gang issues a death threat to you, you have to wait until they've actually got a gun pressed up against your face. Somewhere in between there, maybe just the fact that it's from the Mara gang. These gangs are known by, and it's true in the State Department reports and everything else, to be ruthless. There's no denying that. These gangs are a plague on the societies down in the Northern Triangle. And this court has held that threats can establish persecution. And that doesn't have to be a gun to the actual victim's head. There can be some sort of peripheral evidence. But there just wasn't any in this case. There weren't any other people in this village who were plagued by these gang members, if they were even gang members. It was a personal threat to her. So we know that the gang does this, and we know that they individually singled her out for a death threat. Why isn't that enough? Do they have to threaten everybody in the village before it's grounds for finding fear of future persecution, as Ms. Said argued? No, but there just has to be something, as this court has described, that the threat has to be extraordinarily ominous. I mean, you talked about this a couple of times. And then I'm just saying, why isn't death, sort of by definition, extraordinarily ominous? And if there's other evidence to combine that with, like in L.A., where the FARC were terrorizing this family, demanding money, and they actually kidnapped somebody known to the family in combination with these extortion threats, then maybe there is some sort of lower threshold. But the agency's entitled to some deference in determining what is persecution on a case-by-case basis. Oh, yeah. I mean, I just can see that the United States just doesn't really care that people are killed in these countries. And if you've got a death threat and it's carried out, then too bad. I mean, that is certainly not the position of the United States. It's just an application of the laws that Congress has passed and who gets to claim refuge in the country. I mean, if there were a factual dispute about whether she'd received a death threat, I would see this quite differently, because, of course, the immigration judge is the front-line person to resolve factual disputes like that. If the immigration judge said, oh, you know, she said that there was a stone with a death threat, but, frankly, I find her not credible on that point. End of discussion. There's also been a problem with, in essence, the dialogue between the Board of Immigration Appeals and this court and other courts' appeals on this question, where we wind up reviewing cases with a deferential standard of review.  And we use the kinds of very strong language about what's needed that you quoted. And the board then turns around and says, that's the standard. Now, we've reversed, as I'm sure you're aware, some denials of relief, because it appeared that the board wasn't exercising its judgment in the first place and instead was deferring to our deferential review. And the ratchet effect takes us into territory that we really shouldn't be going into. Right. And I know the courts criticized the board within the past week or two on that fact alone. But, I mean, to get back to Chief Judge Wood's point that these death threats are certainly ominous. It's demanding money or death. There are other protections in place that we require a petitioner or an asylum applicant to do before we're going to allow them refuge in the country. And the board didn't touch on it here, but there are some protections. You have to show that the police are unable or unwilling to control, in a lot of cases, whether you can relocate. I mean, these aren't issues that the board addressed in this case. But certainly if you can go to a family member or another village or a town to avoid death threats, those are options that people living in these countries certainly should take first before making the dangerous trek to the United States. Sure. I just didn't see that in this case, but you're quite right. That's in the law. Right. And even if you want to find that this death threat was extraordinarily ominous, we still deal with the nexus issue where you have to tie it to a protected ground in the law in order to be granted relief. And again, the record here does not compel anything other than these people wanted money. They believed she had money, and that's the only reason they targeted her. And down to about two minutes, so if you want me to address the Pereira issue. It's coming up a lot. We're certainly quite familiar with it. Right. You've briefed it. Right. So as Judge Roedner kind of laid the road map for what the decision would look like eventually, last week the statute's silent on it. Let's be fair. She said that we didn't need to reach it. She said a few more words than that, but it was clearly dicta. Right. You do have three courts of appeals, though, who've ruled in the Attorney General's favor. Right. And we would posit that the court's decision into Vabne hasn't been explicitly overruled by Pereira and into Vabne the court held that once the DHS files a charging document under 1003.14 of the federal regulations, that vests the Immigration Court of Jurisdiction. I'll just put a marker down to say that I'm disturbed with everybody talking about jurisdiction as though it's just one thing. I mean, there are some things you need a notice of appeal in the court of appeals, but if the notice of appeal isn't accompanied by money, you don't lose your appeal. You get a bill from the clerk saying pay up. So there are things that are important things that need to happen that are not necessarily jurisdictional. And if they don't happen, they can be waived or forfeited. There are different ways of looking at this. Right. And I think I dropped a footnote in the brief that certainly if somebody has later notice and appears at several hearings, they could certainly waive that. We would argue that they would have. Which is why it may not be the word jurisdiction in the strong sense of the term may be a bad word to use here, because if it's like can the district court hear a case between two citizens of Illinois, you would say no. Article III doesn't give that jurisdiction and, I mean, I'm assuming no federal question, and nor does 1332. So that's the strong version of jurisdiction. That's the one that's not waivable. But there are all sorts of other things. We're talking about personal jurisdiction. It's waivable. Other things are. Right. And, I mean, best described, these regulations could be procedural regulations of how compliance and jurisdiction in the leanest sense would vest with the immigration court. And these are regulations. The agencies interpreted them in Bermuda's Cota. Bermuda Yankee would definitely afford that some deference. As my time is up, there's no other questions. Thank you. Anything further, Miss? Did she have any time? Your time ran out. I'll give you a minute if you have one final thought. I just wanted to address the government's claim that we waived the nexus issue and did not challenge it. I know we did not devote a whole section of the brief on the nexus issue, but it was discussed throughout the entire brief regarding to the fear that she suffered and what we are claiming that the threats all began once her son has left and how she fits into this particular social group as a female living alone in Guatemala. As well as the record is clear on the fact that through her testimony, she was found to be credible. The petitioner also testified that it is common knowledge in Guatemala that the police and the government's acquiescence doesn't allow the citizens of Guatemala to ask the police for help because of the corruption and because of the fear of the police officers themselves from the gangs. Okay. Thank you, Judge. Thank you very much. Thanks to both counsel. We'll take the case under advisement. Thank you. Our final case for today is…